# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| GWENDOLYN MARTIN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| TARGET CORPORATION, | |
| Defendant | Jury Trial Demanded |

Plaintiff Gwendolyn Martin ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.     Target Corporation ("Defendant") sells cut up cherries, grapes, peaches, pears, and pineapples "In 100% Juice" described as "Classic Fruit Cocktail In 100% Fruit Juice" under the Market Pantry brand ("Product").





2.     However, "In 100% Juice" and "Classic Fruit Cocktail In 100% Fruit Juice" are misleading because the fruit pieces shown on the packaging are served in a solution containing more than just juice but added water and additives such as natural flavor and the chemical ingredient of ascorbic acid.

## I.     CHEMICALS AND ADDITIVES IN FOOD

3.     Recent surveys have shown that consumers want to know more about the ingredients in the food and beverages they consume.[1]

4.     This is especially important when it comes to the use of chemicals and additives, according to the International Food Information Council ("IFIC").

5.     One poll showed that almost all consumers rated chemicals in food among their top three concerns, higher than foodborne illness from bacteria.

6.     Slightly more than half of Americans believe additives pose a serious health risk.[2]

7.     This behavior makes sense, as studies have confirmed negative health effects linked with consumption of ultra-processed foods ("UPF") laden with chemical additives.[3]

---

[1] Tom Neltner, Environmental Defense Fund, Chemicals Policy Director, Chemicals in food continue to be a top food safety concern among consumers, Food Navigator, Sept. 20, 2021.

[2] Cary Funk et al., Public Perspectives on Food Risks, Pew Research Center, Nov. 19, 2018.

[3] Bhavana Kunkalikar, Processed danger: Industrial food additives and the health risks to children, News-Medical.net, May 23, 2023 (citing recent study in the Journal of the Academy of Nutrition and Dietetics, researchers explore the potential adverse health effects on children due to the use of industrial additives in processed food).

8.     According to one observer, "Our foods are laden with additives that are meant to enhance flavor, color and shelf life that research has shown are either bad for people to consume or inconclusively so."[4]

9.     Giustra echoed consumer concern that "Packaged and processed foods are scary [because] It's nearly impossible to keep up with which ingredients are safe to eat and which ones cause some kind of harm."

## II.   CONSUMER DEMAND FOR "REAL" INGREDIENTS

10.     According to ingredient supplier Corbion, consumer awareness of the potentially harmful effects of food additives means they are increasingly buying foods that "use 'real' ingredients, which is to say, those that are recognizable to consumers," like 100 percent fruit juice.[5]

11.     Another ingredient supplier observed that "Consumer[s] are drawn to naturally occurring ingredients," like 100% juice.

12.     This is because shoppers feel more comfortable when the foods they buy contain ingredients they "would find in their own kitchen cupboards," like "100% juice instead of complicated additives.

13.     Consumer research company Mintel attributed this demand for "real ingredients" in part due to media attention focused on lack of transparency in the

---

[4] Frank Giustra, You Might Be Surprised by What's in Your Food, Modern Farmer, Feb. 8, 2021.
[5] John Unrein, Ingredients on Alert: How Consumer Demand is Influencing Baking's Future, Bake Mag, Aug. 19, 2020.

food industry.[6]

14.   Surveys consistently show that consumers view foods made without chemicals or additives as natural and healthier.

## III.  LEGAL BACKGROUND

15.   Research shows that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory expectations" about attributes such as composition, taste and the source of that taste.[7]

16.   In response to an unregulated environment where consumers were exposed to dangerous and undisclosed substances in what they were eating, the Pure Food and Drug Act of 1906 set standards for what companies were required to tell the public.

17.   These requirements were strengthened when Congress adopted the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 *et seq*.

18.   Florida adopted these laws in their entirety through its Food Safety Act

---

[6] Lynn Dornblaser, Director, Innovation & Insight, Mintel, "Clean Label: Why this Trend is Important Now," 2017.

[7] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

("FSA") and accompanying regulations. Fla. Stat. § 500.01 *et seq.*; Fla. Stat. § 500.02(2) ("Provide legislation which shall be uniform, as provided in this chapter, and administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the [FFDCA]."); FL Admin Code § 5K-4.002(1)(d) (adopting 21 C.F.R. Parts 101 and 102).

19.    These laws consider a food "misbranded" and misleading if its labeling is false or misleading in any particular. 21 U.S.C. § 343(a); Fla. Stat. § 500.11(1)(a).

20.    One way a product can be considered "misbranded" is if it has a misleading "common or usual name." 21 U.S.C. § 343(a); Fla. Stat. § 500.11(1)(i)(1.).

21.    The "common or usual name" must "accurately identif[y] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); FL Admin Code § 5K-4.002(1)(d)

## IV. "CLASSIC FRUIT COCKTAIL IN 100% FRUIT JUICE" MISLEADING

22.    The representations that the mixed fruits are served "In 100% juice" and "In 100% Fruit Juice" are false, deceptive, and misleading, because instead of fruit and juice, consumers get other unexpected ingredients, revealed by the fine print of the ingredient list on the back of the container.

**INGREDIENTS:** FRUIT (PEACHES, PEARS, GRAPES, PINEAPPLE, CHERRIES [CHERRIES, RED 3]), PEACH JUICE, PEAR JUICE, ==NATURAL FLAVOR==, ==ASCORBIC ACID==.

23.   In addition to the mixed fruits of peaches, pears, grapes, pineapples and cherries, and the fruit juices of peach and pear, the Product contains added "Natural Flavor [and] Ascorbic Acid."

24.   Upon information and belief, the peach juice and pear juice are from concentrate, and therefore contain added water.

25.   By using water and natural flavor, consumers get significantly less of the 100% juice prominently displayed on the label.

26.   Despite the claims the mixed fruit was served in "100% juice," the juice contains added water and additives like natural flavor and ascorbic acid.

27.   These lower quality and laboratory-created ingredients are what consumers buying "100% juice" and "100% fruit juice" are trying to avoid.

28.   While "natural flavor" is defined as the essential oils or extractives obtained from fruit juice, it is not fruit juice. 21 C.F.R. § 101.22(a)(3).

29.   Though "ascorbic acid" is the chemical and synthetic version of vitamin C, originally obtained from fruit juice, the ascorbic acid used in the Product is not from fruit juice but derived from glucose through industrial processing. 21 C.F.R. § 182.3013 in Subpart D – Chemical Preservatives.

30.   Consumers are misled to expect the mixed fruit would be contained within only 100% fruit juice, instead of water combined with additives of "natural flavor, [and] ascorbic acid."

31.   The Product's "common or usual name" of "Classic Fruit Cocktail In 100% Fruit Juice" is misleading because it does not "accurately identif[y] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients" since it omits water, natural flavor and ascorbic acid. 21 C.F.R. § 102.5(a); FL Admin Code § 5K-4.002(1)(d).

32.   The Product's "common or usual name" of "Mixed Fruit in 100% juice" is misleading because its name includes "fruit cocktail" and "100% fruit juice" but does not mention added water, along with natural flavor and ascorbic acid, even though these components are listed in the ingredients where consumers do not see it. 21 C.F.R. § 101.18(b).

33.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than approximately $1.89 for 15 oz (425 g), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

**JURISDICTION**

34.   Jurisdiction is based on the Class Action Fairness Act of 2005

("CAFA"). 28 U.S.C. § 1332(d)(2).

35.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

36.   Plaintiff is a citizen of Florida.

37.   Defendant is a citizen of Minnesota based on its corporate formation.

38.   Defendant is a citizen of Minnesota based on its principal place of business.

39.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

40.   The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at the approximately 386 Target stores in this State and online to citizens of this State.

41.   The Court has jurisdiction over Defendant because it transacts business within Florida and sells the Product to consumers within Florida from the approximately 386 Target stores in this State and online to citizens of this State.

42.   Defendant transacts business in Florida, through the sale of the Product to citizens of Florida from the approximately 127 Target stores in this State and online to citizens of this State.

43.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

44.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

45.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

46.   Venue is in this District with assignment to the Tampa Division because a substantial part of the events or omissions giving rise to these claims occurred in Hillsborough County, which is where Plaintiff's causes of action accrued.

47.   Plaintiff purchased, used and/or consumed the Product in reliance on the labeling identified here in Hillsborough County.

48.   Plaintiff first became aware the labeling was false and misleading in Hillsborough County.

49.  Plaintiff resides in Hillsborough County.

## PARTIES

50.  Plaintiff Gwendolyn Martin is a citizen of Hillsborough County, Florida.

51.  Defendant Target Inc. is a Minnesota corporation with a principal place of business in Minnesota.

52.  Target is an American multinational retail corporation that operates a chain of almost 2,000 big box retail stores throughout the nation, selling everything from furniture to electronics to groceries.

53.  While Target sells leading national brands of products, it also sells many products under one of its private label brands, Market Pantry.

54.  Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

55.  Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

56.  Products under the Market Pantry brand have an industry-wide reputation for quality.

57.  In releasing products under the Market Pantry brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

58.   Target gets national brands to produce its private label items due its loyal customer base and tough negotiating.

59.   Private label products under the Market Pantry brand benefit by their association with consumers' appreciation for the Target brand overall.

60.   That Market Pantry branded products met this high bar was proven by focus groups, which rated them above their name brand equivalent.

61.   A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands [like Market Pantry] are good alternatives to national brands, and more than 60 percent consider them to be just as good."

62.   Private label products generate higher profits for retailers like Target because national brands spend significantly more on marketing, contributing to their higher prices.

63.   The development of private label items is a growth area for Target, as they select only top suppliers to develop and produce Market Pantry products.

64.   Plaintiff purchased the Product between September 2019 and the present, at Target locations in Pasco County, and/or other areas.

65.   Plaintiff is like most consumers who tries to avoid additives based on a belief that they are potentially harmful, not natural and unhealthy.

66.   Like most Americans, Plaintiff prefers to buy foods which prominently represent that their components are the types of ingredients she will have at home

and is familiar with, like fruit and 100% fruit juice.

67.   Plaintiff read and relied on the label statements of "Classic Fruit Cocktail In Fruit 100% juice" and "In 100% Juice" and the pictures of the whole and cut up fruits.

68.   Plaintiff did not expect that in addition to the pictured fruits, the Product would contain water in place of juice.

69.   Plaintiff did not expect that in addition to the pictured fruits and fruit juice, the Product would contain the additives of natural flavor and synthetic ascorbic acid.

70.   Plaintiff bought the Product at or exceeding the above-referenced price.

71.   Plaintiff paid more for the Product than she would have had she known it did not only contain mixed fruit and 100% fruit juice, as she would not have bought it or would have paid less.

72.   The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

73.   Plaintiff seeks to represent the following class:

> All persons in the State of Florida who purchased the Product in Florida during the statutes of limitations for each cause of action alleged.

74.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

75.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

76.   Plaintiff is an adequate representative because her interests do not conflict with other members.

77.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

78.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

79.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Fla. Stat. § 501.201, *et seq*.

80.   Plaintiff incorporates by reference paragraphs 1-33.

81.   The purpose of FDUTPA is to protect consumers against unfair and deceptive practices.

82.  This includes "making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202(3).

83.  The labeling of the Product violated FDUTPA because the representations it was "Classic Fruit Cocktail in Fruit 100% Juice" and "In 100% Juice" when it contained added water, natural flavor and ascorbic acid was unfair and deceptive to consumers. Fla. Stat. § 501.204(1).

84.  The labeling of the Product violated FDUTPA because the representations it was "Classic Fruit Cocktail in Fruit 100% Juice" and "In 100% Juice" when it contained added water, natural flavor and ascorbic acid was contrary to the Food Safety Act, which adopted the FFDCA and accompanying regulations.

85.  The FFDCA and its regulations prohibit consumer deception by companies in the labeling of food. Fla. Stat. § 501.203(3)(c).

86.  Plaintiff believed the Product only contained mixed fruit and 100% fruit juice.

87.  Plaintiff paid more for the Product, would not have purchased it or paid as much if she knew that in addition to mixed fruit and 100% juice, it contained added water and the additives of natural flavor and the chemical ingredient of ascorbic acid.

88.  Plaintiff seeks to recover for economic injury and/or loss she sustained

based on the misleading labeling and packaging of the Product, a deceptive practice under this State's consumer protection laws, by paying more for it than she otherwise would have.

89.   Plaintiff will produce evidence showing how she and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

90.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

## COUNT II
### False and Misleading Adverting,
### Fla. Stat. § 817.41

91.   Plaintiff incorporates by reference paragraphs 1-33.

92.   Defendant made misrepresentations and omissions of material fact, that the Product only contained mixed fruit and 100% juice even though it had added water and the additives of natural flavor and the chemical ingredient of ascorbic acid, through its advertisements and marketing in various forms of media, product packaging and descriptions, and targeted digital advertising.

93.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

94.   Plaintiff paid more for the Product, would not have purchased it or paid

as much if she knew that mixed fruit and 100% juice meant mixed fruit, juice, added water and the additives of natural flavor and the chemical ingredient of ascorbic acid.

95.   Defendant knew these statements and omissions were false and/or misleading.

96.   Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Product.

97.   Plaintiff and class members did in fact rely upon these statements.

98.   Reliance was reasonable and justified because of Market Pantry's reputation as a household name, honestly marketed to consumers.

99.   As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product and the premium amount paid.

## COUNT III
### Fraud

100. Plaintiff incorporates by reference paragraphs 1-33.

101. Plaintiff satisfied the requirements of fraud by establishing relevant elements with sufficient particularity.

102. WHO: Defendant, Target, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing it only contained mixed fruit and 100% juice even though it had added water and the additives of natural flavor and the chemical ingredient of ascorbic acid.

103. WHAT: Defendant's conduct was and continues to be fraudulent because it deceives consumers into believing the Product only contained mixed fruit and 100% juice even though it had added water and the additives of natural flavor and the chemical ingredient of ascorbic acid.

104. Defendant omitted telling consumers the Product did not only contain mixed fruit and 100% juice because it had added water and the additives of natural flavor and the chemical ingredient of ascorbic acid.

105. Defendant knew or should have known this information was material to all reasonable consumers and impacts their purchasing decisions.

106. Defendant conducted or relied on research about consumer purchasing habits and knew almost all consumers seek to avoid products with additives and prefer ingredients they are familiar with, like mixed fruit and 100% juice.

107. Defendant highlighted these attributes in selling the Product to consumers.

108. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

109. Yet, Defendant has represented and/or continues to represent that the Product only contained mixed fruit and 100% juice even though it had added water and the additives of natural flavor and the chemical ingredient of ascorbic acid.

110. WHEN: Defendant made these material misrepresentations and/or omissions detailed herein, continuously throughout the applicable class period and through the filing of this Complaint.

111. WHERE: Defendant's material misrepresentations and omissions, that the Product only contained mixed fruit and 100% juice even though it had added water and the additives of natural flavor and the chemical ingredient of ascorbic acid, were made in the advertising and marketing of the Product, on the front of the packaging, which all consumers buying would inevitably see and take notice of.

112. HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that it only contained mixed fruit and 100% juice even though it had added water and the additives of natural flavor and the chemical ingredient of ascorbic acid.

113. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Product.

114. WHY: Defendant misrepresented that the Product only contained mixed fruit and 100% juice even though it had added water and the additives of natural flavor and the chemical ingredient of ascorbic acid, for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium, in part based on consumer demand for foods without additives and with

ingredients they were familiar with.

115. Moreover, Defendant's use of added water, natural flavor and ascorbic acid allowed it to use smaller amounts of 100% juice, the attributes it highlights on the label.

116. The added water replaces the juice to make it seem like there is more juice.

117. The added natural flavor makes the water taste more like the juice highlighted on the label.

118. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout this State.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   October 8, 2023

Respectfully submitted,

/s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

William Wright

The Wright Law Office, P.A.

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff*

\**Pro Hac Vice* Application Forthcoming